**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.** |
| | : | |
| | : | **VIOLATIONS:** |
| **v.** | | **Conspiracy** |
| | : | **(18 U.S.C. § 371)** |
| | : | **Mail Fraud** |
| **GUILLERMO SANCHEZ,** | : | **(18 U.S.C. § 1341)** |
| | : | **Aiding and Abetting** |
| **Defendant.** | : | **(18 U.S.C. § 2)** |
| | : | **Forfeiture** |
| | : | **(18 U.S.C. § 981 and 28 U.S.C. § 2461)** |

## INFORMATION

The United States Department of Justice, Criminal Division, Fraud Section, charge that at all times material to this Information:

## INTRODUCTION

1.      **GUILLERMO SANCHEZ** ("**SANCHEZ**"), who resides in Miami, Florida, was owner and Chief Executive Officer of ACE Products, an export company in Miami, Florida, that was in the business of purchasing United States goods on behalf of clients and shipping those goods overseas.

2.      The Export-Import Bank of the United States (the "Ex-Im Bank") was an independent agency of the executive branch of the United States and located in Washington, D.C. It was also the official export credit agency of the United States.

3.      The mission of Ex-Im Bank was to assist in the export of United States goods and services to companies overseas. One of the ways Ex-Im Bank fulfilled this mission was by insuring United States lending banks on behalf of creditworthy companies and individuals for the

purpose of purchasing United States goods which are to be exported to companies overseas.

4.      Once Ex-Im Bank has insured a loan, if the borrower defaults on its loan repayments to a United States bank, the Ex-Im Bank pays the amount of the outstanding loan to the United States bank.

5.      Before issuing a loan guarantee, Ex-Im Bank required that a United States exporter - the person or entity shipping the United States goods on behalf of the borrower - certify to Ex-Im Bank the type, amount, and value of the United States goods that it would be shipping and that the goods shipped were made in the United States.

6.      From in or about May 2006 through August 2007, defendant **SANCHEZ** acted as a purported "exporter" in approximately ten (10) loan transactions involving approximately $854,000 with a United States bank (the lending bank) which were insured by the Ex-Im Bank.

7.      Co-Conspirator 1 ("CC#1") was an owner of a freight forwarding company in Miami, Florida.

8.      From in or about May 2006 through in or about August 2006, CC#1 assisted defendant **SANCHEZ** in preparing and submitting loan documents to the lending bank and to the Ex-Im Bank.

9.      The lending bank is the Florida branch of a United States commercial bank.

2

## COUNT ONE
### (CONSPIRACY TO DEFRAUD THE UNITED STATES)

### THE CONSPIRACY

10.    Paragraphs 1 through 9 of this Information are realleged and incorporated by reference as if set out in full.

11.    From in or about May 2006, through in or about August 2007, in the District of Columbia and elsewhere, defendant,

## GUILLERMO SANCHEZ,

and others known and unknown to the Grand Jury did knowingly and intentionally combine, conspire, confederate and agree to defraud the United States and agencies thereof and to commit the following offense against the United States:

> to knowingly and intentionally devise a scheme and artifice to defraud and for obtaining money by means of material false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, would and did cause to be delivered by mail and private and commercial interstate carrier according to the directions thereon, matters and things, in violation of Title 18, United States Code, Section 1341;

### THE PURPOSE OF THE CONSPIRACY

12.    The purpose of the conspiracy was for **SANCHEZ** and his co-conspirators to unlawfully enrich themselves by submitting false and fraudulent information to the Ex-Im Bank through a lending bank, in order to obtain a bank loan and an Ex-Im Bank loan guarantee, and to misappropriate the loan proceeds.

## THE MANNER AND MEANS OF THE CONSPIRACY

13.    Among the manner and means by which defendant **SANCHEZ** and his conspirators carried out the purpose of the conspiracy were the following:

A.    defendant **SANCHEZ** would and did identify a lending bank in the United States and executed false and fraudulent loan agreements with the lending bank and the Ex-Im Bank;

B.    defendant **SANCHEZ** and CC#1 would and did prepare false documents that were submitted to the lending bank and to the Ex-Im Bank to facilitate the fraudulent loan transactions;

C.    defendant **SANCHEZ** and CC#1 would and did prepare false documents stating that United States goods had been purchased and shipped to customers in South America and then caused those documents to be submitted to the Ex-Im Bank; and

D.    defendant **SANCHEZ** would and did receive the proceeds of the bank loan and retained a portion of that money for his own personal benefit and use.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

14.    Within the District of Columbia and elsewhere, in furtherance of the conspiracy and to effect the purpose thereof, the defendant **SANCHEZ** and his co-conspirators committed the following overt acts, among others:

A.    In or about May 2006, defendant **SANCHEZ** told CC#1 that he, through ACE Products, would act as "exporter" in certain transactions between defendant **SANCHEZ** and the South American customers. These transactions were financed by a United States lending bank, in which the Ex-Im Bank insured the loans.

4

B.      In or about June 2006, defendant **SANCHEZ** told CC#1 that he had been instructed by an officer of the lending bank that the lending bank would not disburse the loan proceeds to ACE Products until the bank and the Ex-Im Bank received a Commercial Invoice, Packing List, and Bills of Lading documenting the amount, value, and origin of United States manufactured goods shipped to South America.

C.      From in or about May 2006, through in or about August 2006, defendant **SANCHEZ** and CC#1 prepared false Commercial Invoices and Packing Lists, documenting that defendant **SANCHEZ** had purportedly purchased approximately $854,000 worth of generators manufactured in United States for the South American customers.

D.      From in or about May 2006, through in or about August 2006, defendant **SANCHEZ** and CC#1 prepared or caused the preparation of false Bills of Lading to show the lending bank and the Ex-Im Bank that the generators purportedly manufactured in United States had been shipped to the South American customers.

E.      From in or about May 2006, through in or about August 2006, defendant **SANCHEZ** caused CC#1 to place a false container number and a forged signature of an employee of the shipping company on the Bills of Lading for the purpose of showing to the lending bank and the Ex-Im Bank that the generators purportedly manufactured in United States had been shipped to the South American customers.

F.      From in or about May 2006, through in or about August 2006, defendant **SANCHEZ** prepared false documents indicating that he had shipped approximately $854,000 worth of generators purportedly manufactured in United States to the South American customers.

G.    In or about August 2006, defendant **SANCHEZ** sent to Ex-Im Bank, through the lending bank, the Commercial Invoices, and Packing Lists that he prepared and the Bills of Lading that he caused to be prepared as purported proof that he had purchased and shipped approximately $854,000 worth of United States goods to the South American customers.

H.    In or about August 2006, defendant **SANCHEZ,** through his company ACE Products, received approximately $853,642 in loan proceeds from the lending bank based on defendant **SANCHEZ**'s false representations to the lending bank and to the Ex-Im Bank that ACE Products had spent approximately $854,000 to purchase United States goods and had shipped those goods to the South American customers.

I.    In or about August 2006, after providing the lending bank with false and misleading financial information defendant **SANCHEZ** and others caused the Ex-Im Bank to insure the lending bank for approximately $854,000, promising that the Ex-Im Bank would reimburse the bank for any losses incurred in the loan transactions.

J.    On or about July 23, 2007, defendant **SANCHEZ** caused the lending bank to send by means of United Parcel Service, Inc., a commercial interstate carrier, to the Ex-Im Bank a package containing the Commercial Invoices, Packing Lists, and the Bills of Lading.

K.    In or about August 2007, as a result of defaults associated with the fraudulent defendant **SANCHEZ** loan transactions, the Ex-Im Bank paid the lending bank's claim for outstanding principal and accrued interest of approximately $854,161.

All in violation of Title 18, United States Code, Section 371.

6

## COUNT TWO
### (MAIL FRAUD)

15.    Paragraphs 1 through 9 of the Introduction and Paragraphs 13 and 14 of Count 1 of this Information are hereby realleged and incorporated by reference as if fully set forth herein as describing the defendant's scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

16.    On or about July 23, 2007, in the District of Columbia and elsewhere, for the purposes of executing the scheme and artifice and attempting to do so, the defendant,

### GUILLERMO SANCHEZ,

did knowingly cause to be deposited for delivery by means of United Parcel Service, Inc., a private and commercial interstate carrier, false and fraudulent Commercial Invoices, Packing Lists and the Bills of Lading, sent from the lending bank in Florida to the Ex-Im Bank in Washington D.C., knowing that the false and fraudulent pretenses, representations, and promises contained in the Commercial Invoices, Packing Lists and the Bills of Lading would be relied upon by the Ex-Im Bank.

All in violation of Title 18, United States Code, Sections 1341 and 2.

7

## FORFEITURE ALLEGATION

17.    Counts One and Two are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

18.    As a result of the offenses alleged in Counts One and Two of this Information, the defendant, **GUILLERMO SANCHEZ,** shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of the mail fraud scheme and/or a conspiracy to commit mail fraud, including, but not limited to:

### Money Judgment

$854,161.00, which represents a sum of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of a mail fraud scheme, in violation of Title 18, United States Code, Section 1341, and/or a conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 371.

19.    By virtue of the commission of the felony offenses charged in Counts One and Two of this Information, any and all interest that **GUILLERMO SANCHEZ** has in the property constituting, or derived from, proceeds obtained directly or indirectly as the result of a mail fraud scheme, and/or a conspiracy to commit mail fraud, is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c). If, as a result of any act or omission of the defendant, the property identified above:

a.    cannot be located upon the exercise of due diligence;

8

b.   has been transferred or sold to, or deposited with, a third person;
c.   has been placed beyond the jurisdiction of the Court;
d.   has been substantially diminished in value; or
e.   has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section

981(a)(1)(C), and Title 28, United States Code, Section 2461(c), and incorporating by reference

Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said

defendant up to the value of said property listed above as being subject to forfeiture.

(Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(1)(C)
and Title 28 United States Code, Section 2461(c)).


DENIS j.  MCINERNEY
Chief Fraud Section
Criminal Division
United States Department of Justice


By: Patrick M. Donley
PATRICK M. DONLEY
Senior Ligation Counsel
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
(202) 514-0842
patrick.donley2@usdoj.gov


Date:   April 23, 2010